## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| **John Earl McFadden, Jr.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:22cv1082 (RDA/JFA)** |
| | ) | |
| **Harold W. Clarke,** *et al.*, | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff John Earl McFadden, Jr.'s complaint [Dkt. No. 1], Motion for Leave to Proceed *in Forma Pauperis* [Dkt. No. 2], and Motion to Appoint Counsel [Dkt. No. 3]. Plaintiff, a Virginia inmate, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on September 21, 2022, in which he alleges that his constitutional rights were violated while he was detained at the Sussex II State Prison, a Virginia Department of Corrections ("VDOC") facility located in Waverly, Virginia. [Dkt. No. 1]. He seeks declaratory, injunctive, and monetary relief. [Dkt. No. 1-3 at 5]. First, he alleges that Defendants (Director Clarke, Warden Cabell, and Unit Manager Turner) violated his Eighth Amendment rights in December 2020 by releasing inmates from quarantine who had been "affected by COVID-19" and exposing them to Plaintiff, who had not previously been exposed to COVID-19. [Dkt. No. 1-3 at 3]. Plaintiff contracted COVID-19 two days later and as a result "developed" other illnesses: Acute on Chronic Diastolic Heart Failure; Acute on Chronic Respiratory Failure with hypoxia; Post COVID-19 Pulmonary Fibrosis; and Anemia of chronic disease. [*Id.*].

Second, Plaintiff alleges that he has not been placed on the donor list for a lung transplant, which he needs due to contracting COVID-19, and that Defendants are denying him his "14th Amendment [rights to] due process, equal protection, life, and liberty" by not paying the full cost

of his lung transplant. [*Id.* at 4] (citing VDOC Health Services & Mental Health Services Operating Procedures, 750.2 Transplants, 750.2- IIB (8) and 750.2-III (A3)). Because Plaintiff is a prisoner, his amended complaint must be screened to determine whether it is frivolous, malicious, or fails to state any claims upon which relief may be granted. *See* 28 U.S.C. § 1915A.[1]

## I. APPLICATION TO PROCEED *IN FORMA PAUPERIS*

Plaintiff's institution of confinement has submitted information on Plaintiff's inmate account which reveals that, for the past six months, Plaintiff had an average monthly deposit of $79.16, an average monthly balance of $538.96, and a balance of $196.06 at the time of inquiry. [Dkt. No. 14]. Plaintiff will therefore be required to pay a partial filing fee of $107.79, which is twenty percent (20%) of the greater of the average monthly deposits or balance for the six months preceding the filing of the underlying complaint. *See* 28 U.S.C. § 1915(b)(1). After submitting his initial filing fee, Plaintiff will be required monthly to remit to the Clerk twenty percent (20%) of any income into the Plaintiff's inmate account, if that income causes his inmate account balance to exceed $10.00. 28 U.S.C. § 1915(b)(2). This requirement shall continue until the full filing fee has been paid, even after this civil action is resolved or dismissed.

---

[1] Section 1915A provides:

(a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

## II. MOTION TO APPOINT COUNSEL

"A *pro se* prisoner does not have a general right to counsel in a § 1983 action." *Evans v. Kuplinski*, 713 F. App'x 167, 170 (4th Cir. 2017) (citing *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984)). Further, this Court's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary, and, to qualify, an indigent claimant must present "exceptional circumstances." *See id.* Exceptional circumstances exist where a "*pro se* litigant has a colorable claim but lacks the capacity to present it." *See Whisenant*, 739 F.2d at 163. Here, however, as noted below, Plaintiff has not stated a claim upon which relief can be granted and his motion will be denied without prejudice.

## III. SCREENING PLAINTIFF'S COMPLAINT

Pursuant to § 1915A, a court must dismiss claims based upon "'an indisputably meritless legal theory,'" or where the "'factual contentions are clearly baseless.'" *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (citation omitted). In this regard, this screening process focuses on the sufficiency of the pleadings, and in no way evaluates the very serious health circumstances Plaintiff generally raises in his pleadings. Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Sumner v. Tucker*, 9 F. Supp.2d 641, 642 (E.D. Va. 1998). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990) (a pleading must be presented "with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of the pleader's claims "without untoward effort"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

## A. Claim 1, Exposure to COVID-19

In *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993), the Supreme Court held that the Eighth Amendment protects against future harm to an inmates if he proves a threat to his personal safety from conditions, such as mingling of inmates with serious contagious diseases with other inmates, and if the conditions reveal deliberate indifference to a substantial risk of serious harm. An Eighth Amendment claim for failure to protect is comprised of two elements. First, under the objective prong, an "inmate must show that [he] is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, the subjective prong requires the inmate to "show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837). The official must have a subjective "state of mind more blameworthy than negligence," akin to criminal recklessness. *Farmer*, 511 U.S. at 835, 839-40.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and

disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. A prison official's "general knowledge of facts creating a substantial risk of harm is not enough" because he "must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).

The complaint satisfies the first prong of *Farmer* because courts have consistently found that "[t]here is no doubt that infectious diseases generally and COVID-19 specifically can pose a risk of serious and fatal harm to prison inmates." *Valentine v. Collier*, 956 F.3d 797, 802 (5th Cir. 2020). The complaint, however, does not allege sufficient facts in support of the second prong of *Farmer*.[2]

Plaintiff alleges that he was screened, had his temperature taken, and was tested but did not have COVID-19 until after other inmates, who had been quarantined for fourteen days in December 2020, were released back into his housing area on January 7, 2021. All of these actions indicate the VDOC was attempting to mitigate the impact of COVID-19. Plaintiff's primary allegation against Defendants is a response by Defendant Turner to Plaintiff's question as to why the inmates who had COVID-19 were being released from quarantine. Turner responded, "this is above my pay grade," which does not establish Turner had any involvement in the decision to release the inmates from quarantine and is the only basis upon which he argues Clarke and Cabell are liable for him being exposed to COVID-19. [Dkt. No. 1-3 at 2]. Two days later, January 9,

---

[2] The complaint was mailed to the district court by "Monica Roland," and was not sent via the VDOC mail system. Plaintiff did not rely on the prison authorities to send his federal petition. *See Wilder v. Chairman of the Cent. Classification Bd.*, 926 F.2d 367, 370 (4th Cir. 1991) (finding *Houston v. Lack*, 487 U.S. 266, 276 (1988) filing rule does not apply when a prisoner gives papers to a person other than the prison authorities); *see also Dison v. Whitley*, 20 F.3d 185, 187 (5th Cir. 1994) (holding *Houston* exception is limited to filings with prison officials, over whom a prisoner has no control). Accordingly, the complaint was deemed filed when it was received by the Clerk.

2021, Plaintiff "was infected with COVID-19" and was admitted into a local hospital for "respiratory distress." [Dkt. No. 1-3 at 2]. Plaintiff alleges that due to COVID-19 he was diagnosed with: Acute on Chronic Diastolic Heart Failure; Acute on Chronic Respiratory Failure with hypoxia; Post COVID-19 Pulmonary Fibrosis; and Anemia of chronic disease.

Plaintiff has not alleged sufficient facts to establish that any of the named Defendants were aware of any risk that the quarantined inmates presented when they were released from quarantine. First, Plaintiff admits that the VDOC was testing inmates and planning to provide vaccines in December 2020, which are all actions by the VDOC intended to mitigate the impact of and protect inmates from COVID-19. Plaintiff also states that the inmates that the "Sussex II officials" quarantined were the inmates that had been "infected" or had "high temperatures." [Dkt. No. 1-3 at 2]. Again, "Sussex II officials" were trying to isolate persons with COVID-19 to protect other inmates. There are no facts alleged that would support an inference that any of the "Sussex II officials" knew that the individuals released from quarantine posed a danger to other inmates. *See Farmer*, 511 U.S. at 844 (the fact that "the harm ultimately was not averted" does not demonstrate deliberate indifference). At bottom, "officials who act reasonably cannot be found liable" because they did not disregard the risk. *Id.* 845. The reasonableness of the actions taken must be judged in light of the risk known to the defendant at the time. *Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000). Plaintiff's allegations do not establish that the release of the inmates from quarantine was deliberately indifferent, much less that the three named Defendants were involved in the decision that he states exposed him to COVID-19, which is the foundation upon which his claim rests.

At to the individual Defendants, Plaintiff has neither alleged nor shown that any of the named Defendants knew of and disregarded an excessive risk to his health and safety, an "exacting" standard, by releasing the inmates from quarantine, *Jackson v. Lightsey*, 775 F.3d 170,

178 (4th Cir. 2014); nor has he alleged any type of treatment that "shock[s] the conscience," *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), as required to constitute an Eighth Amendment violation. *See Tillery v. Va. Peninsula Reg'l Jail*, No. 1:20cv751, 2020 WL 6742991, at *5 (E.D. Va. Nov. 17, 2020) ("Plaintiff has not established deliberate indifference . . . simply because another inmate, who had been released from a COVID-19 quarantine, was assigned as his cellmate. 'Every person in the United States, whether in a detention facility or not, faces COVID-19 exposure.'" (quoting *Toure v. Hott*, 458 F. Supp. 3d 387, 408 (E.D. Va. 2020))). Defendants Clarke and Cabell are not liable simply because they are higher up in the chain of command. The "mere 'linkage in the prison chain of command' is insufficient to" establish liability for "a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (citation omitted). "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted). For these reasons, Claim 1 fails to state a claim upon which relief can be granted.

### B. Claim 2, Lung Donor List

Plaintiff's second claim—that Defendants violated his constitutional rights because he was not placed on the donor list for a lung transplant to his exposure to COVID-19—does not contain any allegations of fact that establish that any of the three named Defendants are involved in listing inmates on a donor list or approving inmates for transplants. To the contrary, Plaintiff cites to OP 750.2, and that regulation indicates that the decisions for probationers and parolees are made by the "medical authority."

> If the medical condition is such that the surgery cannot be delayed until the CCAP [Community Corrections Alternative Program] probationer/parolee completes the CCAP, the medical authority or designee will document the emergent nature of the transplant receipt or donation and the CCAP probationer/parolee will be removed from the CCAP as medically unsuitable. The Regional Administrator will approve or deny the removal and the CCAP probationer/parolee may be considered to

7

reenter the CCAP after recovery, if suitable.

VDOC Health Services & Mental Health Services Operating Procedures, 750.2, Transplants, I(B) (https://vadoc.virginia.gov/files/operating-procedures/700/vadoc-op-750-2.pdf)   ("OP   750.2"). The regulations define the medical authority as "[t]he lead facility health care or dental care practitioner. Clinical supervision is provided by the Chief Physician or Chief Dentist." VDOC OP 701.1,   Health   Services   Administration,   Definitions   (https://vadoc.virginia.gov/files/operating-procedures/700/vadoc-op-701-1.pdf). Assuming this portion of the regulation applies to Plaintiff, the complaint does not allege that any of the three named Defendants made any decision or have the authority to make any decision regarding transplants. Indeed, the regulation that Plaintiff cites indicates that other persons are the decision makers for transplants.

Further, OP 750.2 expressly states that "[i]f the inmate is recommended for transplant, the transplant team's recommendation and justification will be given to Anthem Blue Cross/Blue Shield . . . [and that] Anthem will review the transplant team's recommendation, and make its own recommendation to the HSU, which will make the final decision." Again, the three named Defendants are not involved in the process. An inmate cannot prevail on a deliberate indifference to medical needs claim against non-medical prison personnel unless they were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were deliberately indifferent to a prison doctor's misconduct. *Miltier*, 896 F.2d at 854-55.

Plaintiff also alleges that OP 750.2 denies him "due process, equal protection, life, [and] liberty," but he does not explain how. [Dkt. No. 1-3 at 4]. Although a complaint "does not need detailed factual allegations, a Plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Ashcroft*, 556 U.S. at 678

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotations omitted).

Here, the complaint states in a conclusory manner that because donors, not inmates, are responsible for their medical costs that somehow violates his rights. He also alleges that OP 750.2 somehow "implicitly abolishes the right to have a transplant." [*Id.*]. To state an equal protection claim, Plaintiff's claim "must plausibly allege first that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Fauconier v. Clarke*, 966 F.3d 265, 277 (4th Cir. 2020). Plaintiff "must also plausibly allege that 'the disparity was not justified under the appropriate level of scrutiny,' which, in the prison context, means that he 'must allege that the disparate treatment was not reasonably related to any legitimate penological interests.'" *Id.*

To state a due process claim, Plaintiff must establish that he has been denied something, and that what he has been denied is something in which he has a liberty interest. Plaintiff alleges he has been denied a transplant but has offered nothing to indicate that anyone, other than himself, has determined that he needs a transplant, much less that he is a candidate for a transplant. "In order to make out either a substantive or procedural due process claim, a plaintiff must allege sufficient facts to support a finding that the [plaintiff] 'w[as] deprived of life, liberty, or property, by governmental action.'" *Equity in Ath., Inc. v. Dep't of Educ.*, 639 F.3d 91, 109 (4h Cir. 2011) (quoting *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997)).

Here the complaint, at best, indicates he disagrees with the treatment plan established by the doctors treating him for the illnesses he says are related to having had COVID-19, and demands

to be placed on a donor list. [Dkt. No. 1-5 at 2]. The same documents indicate that "Sussex II State Prison has followed protocols during the pandemic (COVID-19) to protect the inmates," that the "medical department has attended to [plaintiff's] medical needs per policy," plaintiff was provided with VDOC OP 750.2 on June 16, 2022 and the procedures for transplants, and that plaintiff would continue to receive medical care. "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

## C. Misjoinder

Claim 2, regarding the lung transplant, also does not appear to be properly joined in the present complaint. Rule 18 of the Federal Rules of Civil Procedure, requires "[u]nrelated claims against different defendants" to be brought "in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Under Rule 18, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *Id.* at 607. Under Rule 20, persons may be joined in one action as defendants if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Both of Rule 20(a)'s requirements must be satisfied in order to sustain party joinder under the rule. *See Intercon Research Assocs., Ltd. v. Dresser Indus.*, 696 F.2d 53, 57 (7th Cir. 1982); *see also Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017) (district courts should not allow inmates "to flout the rules for joining claims and defendants" (citing Fed. R. Civ. P. 18, 20)); *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) ("A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot."). "Rule 20 does not authorize a plaintiff to add claims 'against different parties [that] present [] entirely different factual and legal issues."

10

*Sykes v. Bayer Pharm. Corp.*, 548 F.Supp.2d 208, 218 (E.D. Va. 2008) (alterations in original) (quoting *Lovelace v. Lee*, No. 7:03cv00395, 2007 U.S. Dist. LEXIS 77890, at *4 (W.D. Va. Oct. 21, 2007)). It is readily apparent that exposure to COVID-19 and not being placed on a donor list for a lung transplant violate the rules on joinder. The complaint does not provide any factual allegations connecting any of the three named Defendants to the alleged denial of being placed on a donor list for a lung transplant.

Rules 18 and 20(a) preclude Plaintiff from pursuing claims through a "buckshot" or "mishmash" complaint such as Plaintiff has filed. *George*, 507 F.3d at 607. In deference to his *pro se* status, however, the Court will allow Plaintiff an opportunity to amend his complaint to comply with Rules 8, 10, 18, and 20. In the amended pleading, Plaintiff should include only the claim or claims that may have common issues of fact or law. If Plaintiff wishes to proceed with Claim 2, he must establish the necessary connection with Claim 1, or pursue it in a separate lawsuit and incur another filing fee.

Because Plaintiff is proceeding *pro se*, he will be allowed leave to amend and cure the deficiencies noted herein.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED that Plaintiff's application to proceed *in forma pauperis* [Dkt. No. 2] be and is GRANTED and Plaintiff's complaint is deemed filed as of this date; and it is

FURTHER ORDERED that Plaintiff's correctional institution send to the Clerk an initial filing fee of $107.79, and thereafter submit twenty percent (20%) of Plaintiff's preceding month's income any time his monthly account balance is at least $10.00 until the full $350.00 filing fee has been paid, and should Plaintiff fail to keep twenty percent (20%) of his preceding month's income

in his account, to complete the enclosed Report of Violation of the Consent Order and return it to this Court; and it is

FURTHER ORDERED that Plaintiff's motion to appoint counsel [Dkt. No. 3] is DENIED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that Plaintiff particularize and amend his complaint and file an amended complaint within thirty (30) days of the date of this Order using the enclosed standardized § 1983 complaint form by (i) naming every person he wishes to include as a defendant, (ii) identify each claim he seeks to raise by letter or number, (iii) submitting a short, detailed statement of background facts which describes the specific conduct of each defendant whom he alleges violated his constitutional rights, including the facts giving rise to his complaint, the dates of each incident, the persons involved, the reasons why he believes each defendant is liable to him, and the remedies sought, (iv) and curing the deficiencies noted herein. Plaintiff must reallege all the facts from his original and first amended complaint in this second amended complaint and he must include his civil action number, No. 1:21cv1082 (RDA/JFA), on the first page of his amended complaint. Plaintiff is advised that this second amended complaint will serve as the sole complaint in this civil action; and it is

FURTHER ORDERED that Plaintiff's failure to comply with any part of this Order within thirty (30) days from the entry of this Order, or failure to notify the Court immediately upon being transferred, released, or otherwise relocated, may result in the dismissal of this complaint pursuant to Federal Rule of Civil Procedure 41(b).

The Clerk is directed to send a copy of this Order and a § 1983 form to Plaintiff and a copy

of this Order, the signed consent form [Dkt. No. 7], and the Report of Violation of the Consent

Order to Plaintiff's correctional institution.

It is SO ORDERED.

Alexandria, Virginia
February 17, 2023

_____ /s/ _____
Rossie D. Alston, Jr.
United States District Judge

13